**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **MICHAEL ASAMOAH,** | : |
| | : Case No. 2:20-cv-3305 |
| **Plaintiff,** | : |
| | : **CHIEF JUDGE ALGENON L. MARBLEY** |
| v. | : |
| | : **Magistrate Judge Elizabeth Preston Deavers** |
| **AMAZON.COM SERVICES, INC.,**[1] | : |
| | : |
| | : |
| **Defendant.** | : |

**OPINION & ORDER**

**I. INTRODUCTION**

This matter is before the Court on Defendant Amazon.com Services LLC's ("Amazon" or "Company") Motion to Dismiss. (ECF No. 23). Also pending before the Court is Plaintiff Michael Asamoah's Motion for Default Judgment. (ECF No. 25). For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Amazon's Motion to Dismiss [#23]. The Court **DISMISSES WITHOUT PREJUDICE** Counts Three, Four, Five, Six, and Seven of Mr. Asamoah's Complaint. Additionally, the Court **DENIES** Mr. Asamoah's Motion for Default Judgment [#25].

**II. BACKGROUND**

Michael Asamoah is African American and a former Fulfillment Associate for Amazon. He worked for Amazon from December 4, 2018 to on or around March 15, 2019. Per his employment agreement with Amazon, Mr. Asamoah was an at-will employee, and he received an

---

[1] Defendant's proper name is Amazon.com Services LLC.

1

allotment of Unpaid Personal Time ("UPT") to cover time off work for any reason. During his employment, Amazon rewarded Mr. Asamoah for his work through bonuses and gift cards. Mr. Asamoah did not miss any days of work prior to early March 2019, and he had never used any of his UPT.

On March 9, 2019, Mr. Asamoah became sick and went to the doctor, who told him not to go to work for "several days." (ECF No. 1 at 8). He called Amazon's Human Resources office to notify them he was sick, and he was instructed to bring a doctor's note with him when he returned to work. Mr. Asamoah then reported to his next scheduled shift on March 15. Upon his return, he presented his doctor's note to his new manager, Dalton Ferrell. Mr. Ferrell allegedly refused to accept the note and instead informed Mr. Asamoah that he had already been terminated. During that interaction, Mr. Ferrell also made remarks that Mr. Asamoah perceived to be racist and discriminatory against his national origin. Mr. Asamoah complained to Mr. Ferrell's boss about Mr. Ferrell's "refusal to accept and honor the valid doctor's note." (*Id.* at 11). He also reported the incident to Amazon's Human Resources department, who told Mr. Asamoah that Mr. Ferrell's decision to terminate him did not comport with Company procedures.

Mr. Asamoah filed a charge of discrimination (the "Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission the next day, on March 20, 2019. In the Charge, he alleged he was the victim of race and national origin discrimination in violation of Title VII. Mr. Asamoah submitted that he was not given a reason for his termination, but that he believed it occurred because of his "race, Black" and because he was "perceived to be of an African Ancestry because of [his] last name." (ECF No. 23-3). He made no other claims of discrimination in the Charge.

2

Mr. Asamoah received a Right to Sue letter from the EEOC on April 1, 2020. (ECF No. 1). He then filed this suit *pro se*, asserting seven causes of action: unlawful race discrimination (Count One) and unlawful national origin discrimination (Count Two), in violation of Title VII of the Civil Rights Act of 1964; unlawful age discrimination, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") (Count Three); unlawful disability discrimination, in violation of the Americans with Disabilities Act of 1990 ("ADA") (Count Four); and unlawful retaliation, in violation of Title VII (Count Five). He also alleges state law violations for breach of implied contract (Count Six) and intentional infliction of emotional distress (Count Seven). Amazon now moves to dismiss Mr. Asamoah's Complaint for failure to state a claim upon which relief can be granted. Additionally, Mr. Asamoah seeks default judgment because Amazon did not file an Answer to his Complaint.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for a failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "the plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and to state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although the court "must accept all well-pleaded factual allegations in the complaint as true," the court "need not accept as true a legal conclusion couched as a factual

allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted). In short, the plaintiff's complaint "must be enough to raise a right to relief above the speculative level."

The Court must liberally construe a *pro se* plaintiff's pleadings. *Pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *West v. Adecco Employment Agency*, 124 F. App'x 991, 992 (6th Cir. 2005) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Supreme Court, however, has "never suggested procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *Id.* (quoting *McNeil v. United States*, 508 U.S. 106, 113 (1993)). A *pro se* litigant "must conduct enough investigation to draft pleadings that meet the requirements of the federal rules." *Id.* (quoting *Burnett v. Grattan*, 468 U.S. 42, 50 (1984)).

## IV. ANALYSIS

Amazon moves to dismiss each count in Mr. Asamoah's Complaint for a failure to state a claim upon which relief can be granted. Amazon also argues that two of Mr. Asamoah's claims—the age discrimination claim (Count Three) and the disability discrimination claim (Count Four)—should be dismissed due to his failure to exhaust administrative remedies.

### A. Whether Mr. Asamoah Exhausted Administrative Remedies (Counts Three and Four)

Amazon argues that Mr. Asamoah's age discrimination claim (Count Three) should be dismissed because he failed to exhaust his administrative remedies as required by the ADEA. Similarly, Amazon contends that Mr. Asamoah's disability discrimination claim (Count Four) did not meet the administrative requirements under the ADA and therefore should be dismissed.

Pursuant to the provisions of the ADEA, a plaintiff must file a charge with the EEOC before filing a complaint claim in federal court. 29 U.S.C. § 626(d)(1); *see also Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998). A plaintiff's charge must either

directly make an age discrimination claim, or it must contain allegations that could be "reasonably expected" to prompt the EEOC to investigate an age discrimination claim. *See Davis*, 157 F.3d at 463−64 ("[W]here facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim."). Likewise, a plaintiff must also exhaust administrative remedies prior to filing a disability discrimination action in federal court under the Americans with Disabilities Act. 42 U.S.C. §§ 2000e5(e)(1), 12117(a); *Grace v. City of Lancaster Dep't of Transp.*, No. 2:17-CV-522, 2018 WL 1851330, at *2 (S.D. Ohio Apr. 18, 2018) (quoting *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002) (finding that a federal court must be "limited to the scope of the EEOC investigation reasonably be expected to grow out of the charge of discrimination")).

These administrative prerequisites are in place to trigger the EEOC's investigation, to notify potential defendants of the plaintiff's claim, and to provide the parties with an opportunity to settle. *Id.* at 463. Accordingly, when a plaintiff files a charge asserting facts that are only related to race or national origin discrimination, the plaintiff does not exhaust the administrative requirement for a claim based on age or disability discrimination. *See id*. (concluding that plaintiff's age discrimination claim did not exhaust the administrative requirement because the charge filed with the EEOC only alleged facts relating to race discrimination, and plaintiff only checked the "race" and "other" boxes to indicate the cause of the discrimination on the charge form). Failure to exhaust administrative remedies is an "appropriate basis for dismissal" of an ADEA or ADA claim. *Williams v. Nw. Airlines, Inc.*, 53 F. App'x 350, 351 (6th Cir. 2002).

Here, Mr. Asamoah's Charge did not present any facts alleging a claim of age or disability discrimination, nor does it contain any facts that would prompt the EEOC to investigate a claim of age or disability discrimination. Instead, his Charge only alleges facts relative to his claims of race

and national origin discrimination; namely, that he "was terminated due to [his] race, Black and National Origin." (ECF No. 23-3). Moreover, in the "Cause of Discrimination Based On" section on the Charge form, Mr. Asamoah only checked the "Race" and "National Origin" boxes. (*Id.*). Because he did not include any facts in the Charge that could be reasonably expected to prompt the EEOC to investigate claims of age or disability discrimination, Mr. Asamoah did not exhaust his administrative remedies with respect to these claims. Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Count Three and Count Four.

### B. Whether Mr. Asamoah Has Stated a Cognizable Claim

Amazon also argues that the Court should dismiss the counts in Mr. Asamoah's Complaint for failure to state a claim upon which relief can be granted. The Court addresses each of Amazon's arguments about these claims below.

#### 1. Race and National Origin Discrimination Claims (Counts One and Two)

First, Amazon argues that Mr. Asamoah fails to offer any direct evidence or circumstantial evidence with respect to his race and national origin discrimination claims, thus failing to establish a cognizable claim under either theory.

Title VII of the Civil Rights Act of 1984 prohibits employers from discriminating against any individual based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e−2(a)(1). A plaintiff can establish an employment discrimination claim under Title VII by showing circumstantial evidence "that creates an inference of discrimination," or by presenting direct evidence of discrimination by the defendant. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010). To survive a motion to dismiss, a plaintiff's complaint must contain either inferential or direct allegations "respecting all material elements" of each claim. *White v. Coventry*

*Health & Life Ins. Co.*, 680 F. App'x 410, 413 (6th Cir. 2013) (internal quotations and citations omitted).

> a. <u>Circumstantial Evidence of Race or National Origin Discrimination</u>

To establish a Title VII discrimination claim via circumstantial evidence, a plaintiff must show: (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for his position; and (4) that a similarly-situated employee outside the protected class was treated more favorably. *Younis*, 610 F.3d at 363 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). The fourth prong specifically requires a plaintiff to show that the employees he seeks to compare "are similarly situated in *all respects*." *Tartt v. City of Clarksville*, 149 F. App'x 456, 461 (6th Circ. 2005) (emphasis in original) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)). To be similarly situated in all respects, the non-protected employee(s) must have "dealt with the same supervisor" as the plaintiff, been accountable to the same employment standards, and engaged in the same conduct as the plaintiff, with no "differentiating or mitigating circumstances." *Id.* at 462. Mr. Asamoah bears the burden of establishing each element of the prima facie case of discrimination under Title VII by a preponderance of the evidence. *McDonnell Douglas Corp.*, 411 U.S. at 802.

Mr. Asamoah fails to meet his burden of proof with respect to the fourth element for both his race and national origin discrimination claims. First, he does not identify the race or national origin of the co-workers to which he compares his treatment. He therefore fails to assert that the more favorably treated employees were not members of a protected class. Second, Mr. Asamoah does not show how he and the favorably treated employees are similarly situated "in all respects." Instead, Mr. Asamoah alleges that he never violated Amazon's attendance or employment policies, but that "[a]ll the other Associates that worked with [him] had two or more absences." (ECF No.

7

1 at 6). Mr. Asamoah suggests that his fellow Associates broke one or more of the Company's policies, but he does not explain that they were accountable to the same standards, nor does he cite any specific provision they allegedly violated. This lack of specificity leaves open the possibility that the Associates to which Mr. Asamoah compares himself were governed by different work policies, such as different amounts of Unpaid Time Off, based on varying lengths of service with Amazon. Moreover, Mr. Asamoah does not show that his fellow Associates dealt with the same supervisor. Indeed, Mr. Ferrell was a "new manager" when Mr. Asamoah returned to work after his illness. (*Id.* at 7). Mr. Asamoah does not meet his burden in establishing that a similarly situated employee outside his protected class was treated more favorably, so he has not established a prima facie case for race or national origin discrimination based on circumstantial evidence.

b. <u>Direct Evidence of Race or National Origin Discrimination</u>

Direct evidence is evidence that "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions" by establishing discriminatory animus on its face. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). Accordingly, direct evidence includes discriminatory remarks "made by a person who played a meaningful role in the challenged decision." *Id.*; *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354−55 (6th Cir. 1998). Individual discriminatory remarks by such a decisionmaker constitute sufficient direct evidence if "a reasonable jury could conclude that the [plaintiff's] race was a motivating factor in [the employer's] decision to terminate her employment." *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 650 (6th Cir. 2012). For example, in *Ondricko*, a decisionmaker made a statement admitting that he did not want to fire a white female employee, but "how [could he] keep the white girl." *Id.* The Sixth Circuit reversed the trial court's grant of

summary judgment in favor of the employer, finding that the statement was direct evidence of racial discrimination. *Id.* Additional circumstances, such as the timing of the statement relative to the firing and the employee's positive disciplinary record, also weighed in her favor and helped establish her race discrimination claim. *Id.*

Here, Mr. Asamoah alleges that his manager, Dalton Ferrell, "made racist derogatory statements" and "a racist offensive statement" while informing Mr. Asamoah that he had been fired during his absence and asking him to return his Company badge. (ECF No. 1, Pl.'s Compl. at 6, 8). Mr. Asamoah also submits that Mr. Ferrell "made derogatory statements regarding . . . [his] ancestry or national origin while asking Plaintiff to give him his Amazon badge." (*Id.* at 8). Mr. Asamoah reports that he was not given a reason for his termination, but that he had a perfect attendance record prior to this illness, and he had received multiple commendations for his work performance. Moreover, Mr. Ferrell was a new Amazon manager and appears not to have met Mr. Asamoah before this interaction.

Mr. Asamoah also describes the steps he took to comply with Amazon's Human Resources policies when he fell ill: he called Amazon's Human Resources office to notify them that he felt sick and would not be able to attend work that day, and he brought a doctor's note when he returned to work on his next scheduled shift six days later, as an Amazon Human Resources staff member instructed him to do. After his negative interaction with Mr. Ferrell, Mr. Asamoah again called Human Resources, who confirmed that Mr. Ferrell had terminated Mr. Asamoah during his absence, calling the action "inconsistent with their HR procedures" and directing him to "ask for an appeal" through the Company website. (*Id.*).

Together, these facts demonstrate facial plausibility of discrimination because they engender a reasonable inference that race and/or national origin bias impermissibly motivated his

9

termination. Mr. Asamoah submits that he was a celebrated employee who had never previously missed a shift and that he followed Amazon's Human Resources protocol when he was sick. While he was absent, Mr. Ferrell—whom he had never previously met—terminated him, a decision that Amazon's own Human Resources staff admits contravened Company policy. When Mr. Asamoah and Mr. Ferrell interacted in person about the termination, Mr. Ferrell made at least one racist remark and at least one derogatory statement about Mr. Asamoah's national origin. Construing Plaintiff's *pro se* pleadings liberally, this Court finds that Mr. Asamoah has pleaded an adequate claim for race and national original discrimination in Counts One and Two of the Complaint.

### 2. Unlawful Retaliation Claim (Count Five)

Amazon also contends that Mr. Asamoah's retaliation claim should be dismissed because he does not allege that he engaged in a protected activity, and because he cannot establish the requisite causation.

Title VII forbids an employer from retaliating against an employee because the employee opposes a practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). A plaintiff who alleges a retaliation claim under Title VII must prove: (1) the plaintiff engaged in a protected activity under Title VII; (2) the employer knew the plaintiff engaged in a protected activity; (3) the employer subsequently took an action that was materially adverse to the plaintiff; and (4) the plaintiff's protected activity caused the employer's adverse action. *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 568 (6th Cir. 2019). *Sizemore v. Edgewood Bd. of Educ.*, No. 1:19-cv-555, 2020 WL 1904726, at *5−6. To establish a "protected activity" under the first prong, a plaintiff must show he opposed an unlawful employment practice or participated in a Title VII investigation, proceeding, or hearing. 42 U.S.C. §2000(e)-3(a)**.** A plaintiff's "complaint or disagreement that is essentially about management decisions" does not constitute a protected activity. *Kimbrough v.*

*Cin. Ass'n for Blind & Visually Impaired*, 986 F. Supp. 2d 904, 917 (S.D. Ohio 2013). Under the fourth prong, a plaintiff must prove "but-for" causation, meaning that he must provide evidence that "the unlawful retaliation would not have occurred in the absence of" the employer's wrongful action. *Barrow v. City of Cleveland*, 774 F. App'x 254, 261 (6th Cir. 2019) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).

In this case, Mr. Asamoah does not show he engaged in a protected activity, and he cannot establish but-for causation. First, Mr. Asamoah asserts that Amazon retaliated against him after he complained to "management" and to Mr. Ferrell "that it is not right to refuse to accept a valid doctor's note." (ECF No. 1 at 11). Mr. Asamoah does not allege that he complained about discriminatory treatment or any other unlawful employment practice. Instead, he only asserts that he complained about a management decision not to accept his doctor's note to excuse his absence. Such an activity is not protected by Title VII, and Mr. Asamoah does not allege any other facts indicating he engaged in a protected activity prior to being terminated. Second, even if Mr. Asamoah had engaged in a protected activity when he returned to work after his illness, he could establish but-for causation. Mr. Asamoah states that he was terminated *before* he returned to work and *before* he complained about Amazon's refusal to accept the note. Because the adverse employment action occurred prior to any action on the part of Mr. Asamoah, he cannot establish the requisite causation. The Court therefore **DISMISSES WITHOUT PREJUDICE** Count Five.

3. Breach of Implied Contract Claim (Count Six)

Amazon advances two arguments in support of dismissing Mr. Asamoah's claim for breach of implied contract. First, the Company contends that Mr. Asamoah's breach of implied contract claim must be dismissed because Mr. Asamoah was subject to an express written contract governing the terms of his employment. Relying on *Williams v. National Association for*

11

*Advancement of Colored People*, Amazon claims that Mr. Asamoah's express employment contract with the Company precludes him from maintaining an action for breach of an implied contract and therefore warrants dismissal of Count Six. 135 N.E.3d 1260, 1268 (2019).

Under Ohio law, it is generally true that "there cannot be an express agreement and an implied contract for the same thing existing at the same time." *Id.* Ohio employment law, however, does allow an at-will employment agreement to be altered by an implied contract. *See, e.g.*, *Alexander v. Columbus St. Comm. Coll.*, 35 N.E.3d 949, 954 (Ohio Ct. App. 10th Dist. 2015) (noting that an "implied contract altering the terms for discharge" is an exception to the employment-at-will doctrine). In this case, Amazon declares that it had an express agreement for at-will employment with Mr. Asamoah. This agreement, on its own, does not automatically preclude Mr. Asamoah from asserting the existence of an implied contract, so his claim is not dismissed on this basis.

Alternatively, Amazon argues that Mr. Asamoah's contract claim must be dismissed for failure to state a claim. To prevail on a breach of implied contract claim under Ohio law, a plaintiff must prove: (1) a contract existed; (2) the plaintiff performed his duties under the contract; (3) the employer breached its duties under the contract; and (4) the plaintiff suffered damages as a result of the employer's breach. *Leeper v. HealthScope Benefits*, 2:19-cv-5401, 2020 WL 1290089, at *6 (S.D. Ohio Mar. 18, 2020). When a plaintiff asserts that an implied employment contract overcomes a contract for at-will employment, the plaintiff must show the parties mutually assented to something other than at-will employment. *Dunlap v. Edison Credit Union, Inc.*, 928 N.E.2d 464, 467 (Ohio Ct. App. 2d Dist. 2010). Specifically, the plaintiff "bears the heavy burden" of showing: (1) the employer assured the plaintiff that "satisfactory work performance was connected to job security"; (2) the employee subjectively believed he could expect continued employment;

and (3) the employer indicated that it shared the expectation of continued employment. *Copley v. Westfield Grp.*, 2011-Ohio-4709, at ¶ 10 (quoting *Craddock v. Flood Co.*, 2008-Ohio-112, at ¶ 7).

Here, Mr. Asamoah does not allege sufficient facts to prove that Amazon breached an implied contract. He asserts only that he had an "implied-in-fact contract" with Amazon and that there was a mutual agreement for "Plaintiff to perform services and Defendant to compensate him for his services." (ECF No. 1 at 12).[2] Setting aside the bare legal conclusions that Mr. Asamoah asserts, the remaining factual allegations do not suggest that he and the Company assented to an implied contract that altered his at-will employment contract or established an expectation of continued employment. Moreover, Mr. Asamoah does not identify any specific term or condition that Amazon breached. Mr. Asamoah likewise fails to allege any facts indicating that he sustained damages as a result of Amazon's alleged breach. Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Count Six.

    4. <u>Intentional Infliction of Emotional Distress Claim (Count Seven)</u>

Finally, Amazon argues that Mr. Asamoah has only asserted conclusory allegations with respect to his intentional infliction of emotional distress claim and therefore this claim should be dismissed.

Under Ohio law, to prove intentional infliction of emotional distress, a plaintiff must demonstrate that: (1) the defendant intended to cause the plaintiff's emotional distress, or the

---

[2] Amazon incorrectly stipulates that Mr. Asamoah's Letter of Agreement with Amazon may be considered part of the pleadings for the purposes of Amazon's Motion to Dismiss because Mr. Asamoah "referred to [it] in his Complaint" and because the document is "central to his claims." (ECF No. 23-1 at 3 n.2). Courts in the Sixth Circuit may consider "documents that a defendant attaches to a motion to dismiss" if those documents "are referred to in the plaintiff's complaint and are central to [his] claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). Here, Mr. Asamoah does not directly or indirectly refer to the Letter of Agreement anywhere in his Complaint, and it is not central to his claims.

defendant knew or should have known his conduct would cause the plaintiff's emotional distress; (2) the defendant's conduct was "outrageous and extreme beyond all bounds of decency"; (3) the defendant's conduct proximately caused plaintiff's injuries; and (4) the plaintiff experienced serious emotional distress that "no reasonable person could be expected to endure." *Bolander v. BP Oil Co.*, 128 F. App'x 412, 419 (6th Cir. 2005). Notably, an employee's termination "does not rise to the level of extreme and outrageous conduct without proof of something more," even if the termination was based on discrimination. *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999).

In this case, Mr. Asamoah asserts that "Manager Dalton Ferrell's conduct was extreme and outrageous," "reckless," and "transcend[ed] all bounds of decency tolerated by our society." (ECF No. 1 at 12). He further alleges that his termination caused "severe emotional distress" and that he "suffered emotional distress." (*Id.*). These allegations constitute the type of legal conclusions the Court need not accept as true for purposes of deciding a motion to dismiss. *See Twombly*, 550 U.S. at 555. Mr. Asamoah asserts no other specific facts in support of his intentional infliction of emotional distress. For these reasons, Count Seven is **DISMISSED WITHOUT PREJUDICE**.

### C. Motion for Default Judgment

Mr. Asamoah asserts that Amazon failed to file an Answer to his Complaint by the extended deadline of August 17, 2020. (ECF No. 25). While it is true that Amazon did not file an Answer in response to Mr. Asamoah's Complaint, the Company did file a Motion to Dismiss for Failure to State a Claim on August 17, 2020. (ECF No. 23-1).

The Federal Rules of Civil Procedure provide that a defendant may respond to a complaint in several ways. In addition to filing an answer, the defendant may also file a pre-answer motion, such as a motion to dismiss. Fed. R. Civ. P. 12(b). Here, Amazon timely filed a motion to dismiss

pursuant to Federal Rule 12(b)(6). Having found no basis for Mr. Asamoah's Motion for Default Judgment, the Court **DENIES** the Motion [#25].

## V. CONCLUSION

For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** Amazon's Motion to Dismiss [#23]. Counts Three, Four, Five, Six, and Seven are **DISMISSED WITHOUT PREJUDICE**. Finally, Mr. Asamoah's Motion for Default Judgment [#25] is **DENIED**.

**IT IS SO ORDERED.**

                                                **ALGENON L. MARBLEY**
                                                **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: December 7, 2020**